UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNOR B., by his next | ) |
| friend, ROCHELLE VIGURS, | ) |
| ET AL., | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) C.A. No. 10-cv-30073-MAP |
| | ) |
| DEVAL L. PATRICK, ET AL., | ) |
| Defendants | ) |

MEMORANDUM AND ORDER REGARDING
PLAINTIFFS' MOTION TO CERTIFY CLASS
AND APPOINT CLASS COUNSEL
(Dkt. No. 2)

February 28, 2011

PONSOR, D.J.

I. INTRODUCTION

Plaintiffs bring this proposed class action on behalf of all children who have been (or will be) placed in the custody of the Massachusetts Department of Children and Families ("DCF") as a result of a state juvenile court order adjudicating them in need of "care and protection" due to abuse or neglect by their parents. Plaintiffs challenge certain facets of the foster care system in Massachusetts and seek injunctive relief under provisions of the United

States Constitution and under the federal Adoption
Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 670
et seq. ("AACWA").

On January 4, 2011, this court denied Defendants'
motions to dismiss.  Presently before the court is
Plaintiffs' motion to certify class and appoint class
counsel (Dkt. No. 2).  For the reasons discussed below,
Plaintiffs' motion will be allowed.

## II. FACTS

Plaintiffs seek certification of a class that consists
of "all children who are now or will be in the foster care
custody of the Massachusetts Department of Children and
Families as a result of abuse or neglect."  The six named
Plaintiffs -- Connor B., Adam S., Camila R., Andre S., Seth
T., and Rakeem D. -- allege that they suffered various forms
of harm while in DCF custody as a result of systemic
failures.  These harms are briefly detailed below.

Connor B.  Plaintiffs allege that DCF moved Connor B.
(nine years old) through seven foster care placements;
placed him in inappropriate foster homes, including one in
which he was sexually abused; failed to provide him with

needed therapy; failed to provide staff at one placement with documentation of Connor's history or medication needs; failed to place him in a residential treatment program in disregard of clinical recommendations that he needed such a program; and failed to take the necessary steps to free him for adoption or to secure a permanent placement for him. (Compl. ¶¶ 15-34.)

Adam S. Plaintiffs allege that DCF failed to secure safe placements for Adam S. (sixteen years old) and moved him through at least five placements, including an initial placement with adoptive parents who physically abused him (leading to the surrender of their parental rights); placed him in two residential centers that did not meet his needs, including one in which he was beaten by other residents as part of a "fight club" orchestrated by staff; failed to find a permanent home for him; and failed to prepare him to live independently. (Compl. ¶¶ 35-56.)

Camila R. Plaintiffs allege that DCF moved Camila R. (thirteen years old) through at least eleven placements, which included being returned at one point to her mother despite earlier physical abuse by her mother; failed to

ensure that Camila received necessary therapy for mental health issues, including post-traumatic stress disorder; failed to timely assess her educational needs; and failed to seek placement with kin or to secure a permanent placement for her. (Compl. ¶¶ 57-78.)

Andre S.  Plaintiffs allege that DCF moved Andre S. (fifteen years old) among six placements that did not meet his needs, including one kinship foster home in which he may have been sexually abused; failed to take actions necessary to preserve his relationship with family members; inappropriately placed him in a residential treatment program, where he lived for five years; failed to ensure that he receive an evaluation for sexual abuse; and failed to secure a permanent placement for him despite his being in custody since he was three years old.  (Compl. ¶¶ 79-97.)

Seth T.  Plaintiffs allege that DCF moved Seth T. (thirteen years old) through multiple placements; failed to secure a permanent placement for him, initially assigning him a goal of long-term substitute care rather than adoption even though the rights of his biological parents had been

terminated; and failed to take necessary steps to preserve Seth's relationship with his brother. (Compl. ¶¶ 98-110.)

Rakeem D. Plaintiffs allege that DCF moved Rakeem D. (fifteen years old) among at least eight placements that did not meet his needs; failed to provide him with a kinship placement despite his expressed desire to be placed with family members; placed him in a group facility some distance from his family members; and failed to meet his educational needs. (Compl. ¶¶ 111-133.)

Plaintiffs allege that these named Plaintiffs are only six of approximately 8,500 children in DCF custody who are exposed to potential harm as a result of systemic deficiencies within DCF, including failure to maintain an adequately staffed and appropriately trained child welfare workforce; failure to properly manage foster care placements; failure to properly develop and implement case plans and service plans for foster children and their families; and failure to access available federal funding. (Dkt No. 1, Compl. ¶¶ 215 - 298.)

### III. DISCUSSION

Fed R. Civ. P. 23(a) authorizes suit by one or more representative parties on behalf of a class only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. In addition, to obtain class certification Plaintiffs must show that they satisfy one of the additional requirements imposed by Fed. R. Civ. P. 23(b). Plaintiffs here move under Rule 23(b)(2), which requires a demonstration that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed R. Civ. P. 23(b)(2).

A.    Numerosity.

To satisfy this first element, Plaintiffs must overcome a relatively "low threshold," which does not impose a precise numerical requirement. Garcia-Rubiera v. Galderon, 570 F.3d 443, 460 (1st Cir. 2009). Generally, classes of

6

forty or more are considered sufficiently numerous under Rule 23(a)(1).  See, e.g., DeRosa v. Mass. Bay Commuter Rail Co., 694 F. Supp. 2d 87, 98 (D. Mass. 2010) (certifying class of approximately 110 members).

Here, the putative class comprises approximately 8,500 children in DCF custody who have suffered harm and/or are exposed to harm as a result of the systemic failures alleged in the complaint.  Although Defendants do not concede that Plaintiffs have satisfied this element, the focus of their challenge lies elsewhere.  In any event, it is undeniable that Plaintiffs have crossed this "low threshold."  For example, Plaintiffs cite one study that identified "252 substantiated instances of abuse and neglect of children in DCF custody" in 2009.[1]  (Dkt. No. 39, Pls.' Reply at 5 n.3.) This figure does not encompass all children who, Plaintiffs allege, have suffered as a result of the other failures outlined in the complaint, including the failure to provide essential medical services, to place them in a permanent

---

[1] Defendants cite a finding much narrower in scope, which identified twenty-three reports of physical or sexual abuse between April 1, 2009 and March 31, 2010.  (Dkt. No. 31, Defs.' Opp'n at 20-21.)  This case, however, is not limited to documented cases of physical or sexual abuse.

home, and to ensure adequate visitation with parents and siblings. Certainly, then, the proposed class "far exceeds the low threshold for numerosity." Garcia-Rubiera, 570 F.3d at 460.

B.   Commonality.

Although set forth as distinct elements of Rule 23, the typicality and commonality concepts "tend to merge." Gen'l Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n.13 (1982). As the Supreme Court explains:

> Both serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

Id. Nonetheless, they are distinct requirements under Rule 23 and, therefore, merit distinct inquiries. See Hassine v. Jeffes, 846 F.2d 169, 177 n.4 (3d Cir. 1988) (explaining that commonality "evaluates the sufficiency of the class itself," while typicality "evaluates the sufficiency of the named plaintiff").

"Rule 23(a)'s requirement of commonality is a low bar, and courts have generally given it a 'permissive application.'" In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d 6, 17 (1st Cir. 2008) (quoting 7A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 1763, at 221 (3d ed. 2005)). Commonality is easily satisfied in part because "there need be only a single issue common to all members of the class." Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd., 247 F.R.D. 253, 263-64 (D. Mass. 2008) (quoting Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 3.10 (4th ed. 2002)) (emphasis in original).

Defendants argue that Plaintiffs' "individual allegations do not translate into proper class claims," thus violating the commonality requirement. (Dkt. No. 31, Defs.' Opp'n at 10.) Defendants' chief contention is that, "other than their unsubstantiated generalizations, [Plaintiffs] have offered no evidence that any of the harm that they experienced was caused by unlawful behavior by the Department, or that the other 8,000+ proposed class members sustained similar harm." (Id. at 17-18.) Plaintiffs

respond that their complaint sets forth highly detailed
allegations of deficiencies within DCF that expose the
entire Plaintiff class to an unreasonable risk of harm, and
they assert that Defendants' attack on the merits of their
allegations is impermissible at this stage in the
litigation.

The resolution of this issue requires the court to
consider, at the outset, a question that the parties have
debated vigorously: what is the evidentiary burden
Plaintiffs carry in attempting to satisfy the requirements
of Rule 23?  At oral argument, Defendants stressed that
Plaintiffs cannot rely on the allegations contained in their
complaint to satisfy Rule 23 and must put forth credible
evidence demonstrating the propriety of class certification.
Defendants urged the court to delay its ruling on this
motion to allow the parties to conduct discovery and then
return to court for an evidentiary hearing.

Although guiding authority on this issue is not
perfectly clear,[2] this court is confident that the burden is

---

[2]  The confusion centers on an apparent conflict between
language used in two Supreme Court decisions concerning the
evidentiary burden imposed on plaintiffs in the context of

not as exacting as Defendants suggest.  To begin with,

Plaintiffs have the burden of proving that class

certification is appropriate.  <u>Smilow v. Sw. Bell Mobile</u>

<u>Sys., Inc.</u>, 232 F.3d 32, 38 (1st Cir. 2003).  It is also

undisputed that a district court "must conduct a rigorous

analysis of the prerequisites established by Rule 23 before

certifying a class."  <u>Id.</u>

What is somewhat less transparent is when a court may

or must make evidentiary findings at the certification

---

class certification.  In <u>Eisen v. Carlisle and Jacqueline</u>,
the Court stated that "[w]e find nothing in either the
language or history of Rule 23 that gives a court any
authority to conduct a preliminary inquiry into the merits
of a suit in order to determine whether it may be maintained
as a class action."  417 U.S. 156, 177 (1974).  More
recently, in <u>General Telephone Company of Southwest v.</u>
<u>Falcon</u>, the Court stated that the certification inquiry
"generally involves considerations that are enmeshed in the
factual and legal issues comprising the plaintiff's cause of
action," noting that "sometimes it may be necessary for the
court to probe behind the pleadings before coming to rest on
the certification question."  457 U.S. 147, 160 (1982).  The
Supreme Court may resolve this confusion -- and, perhaps,
clarify what it means to "probe behind the pleadings" -- in
an upcoming ruling.  <u>See</u> <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131
S.Ct. 795 (2010) (granting certiorari on class certification
question).  As explained in text, however, the need for
preliminary evidentiary findings only arises in certain
class actions, and this is not one of them.  Thus, the
ongoing uncertainty described above has no impact on the
resolution of this motion.

stage.  Defendants rely heavily on <u>In re New Motor Vehicles</u>
<u>Canadian Export Antitrust Litig.</u>, 522 F.3d 6, 17 (1st Cir.
2008), which acknowledged that where the legal or factual
premises underlying the motion for class certification are
disputed, "the court <u>may</u> probe behind the pleadings to
formulate some prediction as to how specific issues will
play out in order to assess whether the proposed class meets
the legal requirements for certification." <u>In re New Motor</u>
<u>Vehicles Canadian Export Antitrust Litig.</u>, 522 F.3d 6, 17
(1st Cir. 2008) (citations and quotation marks omitted)
(emphasis added) (hereinafter "<u>New Motor Vehicles</u>").  "In
short, a court <u>has the power</u> to test disputed premises at
the certification state if and when the class action would
be proper on one premise but not another." <u>Id.</u> (emphasis
added).  Thus, the certification issue "<u>may</u> inevitably
overlap with some critical assessment regarding the merits
of the case." <u>Id.</u> (emphasis added).

As the above emphases indicate, the First Circuit did
not mandate that district courts make evidentiary findings
at the certification stage, but simply acknowledged that
such findings (or, at least, merits-based inquiries) are not

prohibited.[3]  In addition, it is important to place the
excerpted language above in context.  In <u>New Motor Vehicles</u>,
the court was discussing the plaintiffs' evidentiary burden
as it related to the district court's analysis under Rule
23(b)(3), which requires a finding that "questions of law or
fact common to class members predominate."  The court
specifically noted that Rule 23(b)(3) imposes a
significantly greater burden on plaintiffs, explaining that
"'the predominance criterion is far more demanding' . . .
than the commonality requirement."  <u>Id.</u> at 20 (quoting
<u>Amchem Prods. Inc. v. Windsor</u>, 521 U.S. 591, 624 (1997)).
With this "far more demanding" standard in mind, the court
then concluded that "a searching inquiry is in order where
there are not only disputed basic facts, but also a novel
theory of legally cognizable injury."  <u>Id.</u> at 25.  The court
then explained the reach of its decision as follows:

> We do not need to resolve now whether "findings"
> regarding the class certification criteria are
> ever necessary, but we do hold that when a Rule 23
> requirement relies on a novel or complex theory as

---

[3] In fact, as explained <u>infra</u>, the First Circuit expressly
declined to answer the question of when evidentiary findings
are permissible and restricted its holding to the propriety
of merits-based inquiries in general.

> to injury, as the predominance inquiry does in
> this case, the district court must engage in a
> searching inquiry into the viability of that
> theory and the existence of the facts necessary
> for the theory to succeed.

Id. at 26.

Here, the proposed class involves neither a predominance inquiry under Rule 23(b)(3), nor a novel or complex theory as to injury. Cf. id. (requiring rigorous analysis of plaintiffs' novel theory for proving common impact in class action against auto-manufacturers alleging conspiracy to prevent lower-priced Canadian vehicles from being imported into the United States); In re PolyMedica Corp. Sec. Litig., 432 F.3d 1, 16 (1st Cir. 2005) (rigorously testing the evidence submitted by both sides in putative securities class action to determine whether the fraud-on-the-market presumption was reasonably applicable); DeRosa v. Mass. Bay Commuter Rail Co., 694 F. Supp. 2d 87, 97 (D. Mass. 2010) (noting that "statistical evidence of disparate treatment and/or disparate impact are significant" in Title VII cases in which the court must determine whether the challenged employment practice has a class-wide impact to satisfy the demanding predominance inquiry).

While the interplay of a complaint's legal and factual premises <u>may</u> require a court to evaluate the merits of the plaintiffs' allegations and make evidentiary findings before certifying <u>some</u> class actions, this is not one of them. Plaintiffs have set forth highly detailed allegations in their 309-paragraph complaint that outline pervasive alleged problems in the Massachusetts foster care system -- inadequate training and supervision of foster parents, the failure to properly investigate reports of neglect and abuse, delay in removing children from abusive homes, denial of essential educational and medical services, the shuttling of children among multiple placements, the failure to maintain adequate sibling visitation, and the inability to secure appropriate placements for adoption -- as well as the resultant harms.[4]

Defendants demand evidence of the harm that has befallen each member comprising this putative class, but

---

[4]  It is worth noting that one of the Supreme Court's principal concerns in <u>Falcon</u> -- "the need for 'more precise pleadings'" -- is not present here.  <u>Gen'l Tel. Co. of Southwest v. Falcon</u>, 457 U.S. 147, 160-61 (1982)(quoting <u>Johnson v. Georgia Highway Express, Inc.</u>, 417 F.2d 1122, 1125 (5th Cir. 1969)).

actual injury to absent class members need not be proven at
this stage.  See, e.g., Kohen v. Pac. Inv. Mgmt. Co., 571
F.3d 672, 677 (7th Cir. 2009) ("[A] class will often include
persons who have not been injured by the defendant's
conduct. . . .  Such a possibility or indeed inevitability
does not preclude class certification.") (internal citation
omitted); Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)
("[C]lass members can assert such a single common complaint
even if they have not all suffered actual injury;
demonstrating that all class members are subject to the same
harm will suffice.") (emphasis in original); Fed. R. Civ. P.
23(b)(2), 1966 Amendment Advisory Committee Note
(certification appropriate if defendant's action or inaction
"has taken effect or is threatened only as to one or a few
members of the class, provided it is based on grounds which
have general application to the class").  Plaintiffs have
detailed specific policies and/or failures within DCF that
have resulted in specific harms to each named Plaintiff and
that pose a continuing threat to the entire Plaintiff class.
Plaintiffs need not prove how each policy or failure has
harmed each member of the class at this stage.  In other

words, the unreasonable <u>risk</u> of harm created by these
alleged systemic failures within DCF and applicable to the
entire Plaintiff class is sufficient to satisfy the
requirement of commonality.

This conclusion mirrors a recent decision by the Tenth
Circuit, which considered a nearly identical motion for
class certification filed by foster children in Oklahoma
against the Oklahoma Commission for Human Services. <u>See</u>
<u>D.G. v. Devaughn</u>, 594 F.3d 1188, 1192 (10th Cir. 2010).
Affirming the district court's decision to certify the
class, the Court of Appeals stated that "[t]hough each class
member may not have actually suffered abuse, neglect, or the
risk of such harm, Defendants' conduct allegedly poses a
<u>risk</u> of impermissible harm to all children in [state]
custody." <u>Id.</u> at 1196 (emphasis added). The court also
rebuffed the state's "repeated suggestions" to assess the
weight of the plaintiffs' claims, explaining that "at the
class certification stage Named Plaintiffs do not bear the
burden of proving the veracity of their complaint's
allegations." <u>Id.</u> at 1197. In reaching this conclusion,
the Tenth Circuit contrasted the plaintiffs' burden of

17

demonstrating that a common question exists at the

certification stage with the plaintiffs' later burden of

answering that question in their favor:

> Requiring Named Plaintiffs to prove all class
> members were inadequately monitored or are
> actually exposed to a threat of harm due to [the
> Department's] monitoring practices at the
> certification stage would require them to answer
> the common question of fact or law, rather than
> just prove it exists. <u>Rule 23(a) does not require
> the district court to have an answer before
> certifying a class</u>; classwide discovery and
> further litigation answer the question after
> certification.

<u>Id.</u> at 1198 (emphasis added).

In sum, Plaintiffs have satisfied the requirement of

commonality by alleging that various flaws within DCF,

outlined with specificity in the complaint, expose the

entire Plaintiff class to an unreasonable risk of harm in

violation of their constitutional rights. <u>See</u> <u>id.</u>

(concluding that the plaintiffs satisfied commonality); <u>see

also</u> <u>Marisol A. v. Giuliani</u>, 126 F.3d 372, 377 (2d Cir.

1997) (concluding that nearly identical class of foster

children satisfied commonality because the alleged injuries

"derive from a unitary course of conduct by a single

system"); <u>Baby Neal</u>, 43 F.3d at 56 (reversing and remanding

18

district court's decision <u>not</u> to certify nearly identical

class and noting that defendants' commonality argument "has

been squarely rejected by the Supreme Court").

Defendants' suggestion that Plaintiffs must <u>prove</u> at

the certification stage how each policy or failure actually

harmed each member of the Plaintiff class is unavailing.[5]

Despite their assurances to the contrary, Defendants'

---

[5] Curiously, in arguing for this court to assess the merits
of Plaintiffs' allegations, Defendants rely on cases from
the Tenth and Third Circuits -- two circuits that certified
a nearly identical class of foster children and expressly
declined to assess the merits of their allegations.  <u>See</u>
<u>D.G.</u>, 594 F.3d at 1192; <u>Baby Neal</u>, 43 F.3d at 56.  Not
surprisingly, the cases cited by Defendants from those
jurisdictions are factually distinguishable. <u>See</u> <u>Vallario v.</u>
<u>Vandehey</u>, 554 F.3d 1259 (10th Cir. 2009) (reversing decision
to certify class in Eighth Amendment case alleging disregard
of safety risks to inmates where complaint did not identify
any specific forms of requested injunctive relief); <u>Hohider</u>
<u>v. United Parcel Serv., Inc.</u>, 574 F.3d 169 (3d Cir. 2009)
(reversing decision to certify class of Title VII plaintiffs
in disability discrimination case because of the need to
conduct individualized inquiries concerning the effect of
reasonable accommodations).  In any event, the discussions
of the evidentiary burden on class-action plaintiffs in
<u>Vallario</u> and <u>Hohider</u> are consistent with this opinion.
<u>Vallario</u>, 554 F.3d at 1266 ("[A] district court is [not]
categorically prohibited from considering any factor, in
conjunction with its Rule 23 analysis, that touches upon the
merits of a movant's claims."); <u>Hohider</u>, 574 F.3d at 202
(holding that district court should have conducted "rigorous
analysis" to determine whether class-wide injunctive relief
was appropriate).

argument amounts to an attempt to hold "a mini-trial on the merits" prior to certification, which is simply impermissible.  In re PolyMedica Corp. Sec. Litig., 432 F.3d 1, 16 (1st Cir. 2005).[6]

C.   Typicality.

The third requirement of Rule 23(a) requires that the named Plaintiffs' claims be typical of the absent class members.  The claims of the entire class need not be identical, but the class representatives must generally "possess the same interests and suffer the same injury" as the unnamed class members.  Falcon, 457 U.S. at 156.  The typicality requirement "is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees," and, to that end, requires "that the common

---

[6] According to the complaint, Massachusetts ranked fourth worst in a 2008 study measuring the rate of abuse and neglect of children in foster care.  (Dkt. No. 1, Compl. ¶ 5.)  Recent federal audits allegedly ranked the Commonwealth eighth worst in terms of placement stability and thirteenth worst in terms of timeliness of adoptions.  (Id.) Defendants attack these allegations in their briefs and cite countervailing data placing DCF in a more favorable light. However, for the reasons explained in text, the court is not obliged to make evidentiary findings at this stage in the litigation.

claims are comparably central" to both the claims of the
named plaintiffs and those of the absentees.  <u>Baby Neal</u>, 43
F.3d at 57.  As noted, some overlap exists between the
typicality and commonality inquiries.  <u>See</u> <u>Falcon</u>, 457 U.S.
at 157 n.13.

Here, Defendants assert that named Plaintiffs' claims
are not typical because they are "unable to establish that
the class members they purport to represent have viable
claims that are sufficiently similar to justify class
treatment."  (Dkt. No. 18, Defs.' Opp'n at 18.)  Again, this
argument incorrectly assumes that Plaintiffs must <u>prove</u> the
allegations of their complaint at the certification stage.
Additionally, the fact that the harms alleged by named
Plaintiffs may differ in some respects from those suffered
by unnamed Plaintiffs does not undermine typicality.  <u>See,
e.g.</u>, <u>D.G.</u>, 594 F.3d at 1199 ("[T]ypicality exists where, as
here, all class members are at risk of being subjected to
the same harmful practices, regardless of any class member's
individual circumstances.");  <u>Baby Neal</u>, 43 F.3d at 56
("Where an action challenges a policy or practice, the named
plaintiffs suffering one specific injury from the practice

can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice."); Tyler v. Suffolk County, 253 F.R.D. 8, 10-11 (D. Mass. 2008) (rejecting defendants' argument that name plaintiffs were not typical despite fact that "different inmates had widely different experiences"); Rolland v. Celluci, No. 98-30208-KPN, 1999 WL 34815562, at *7 (D. Mass. Feb. 2, 1999) ("The fact that individual class members may have somewhat different needs, . . . or may be entitled to or need different services, does not justify denying class certification."). Because Plaintiffs have identified specific systemic failures that expose the entire Plaintiff class to an unreasonable risk of harm, the typicality requirement is satisfied.

D.  Adequacy of Representation.

Rule 23(a)(4) requires that representatives fairly and adequately represent the interests of the entire class.  To meet this requirement, Plaintiffs must satisfy two criteria: (1) the attorneys representing the class must be qualified and competent; and (2) the class representatives must not have interests antagonistic to or in conflict with the

unnamed members of the class.  <u>Andrews v. Bechtel Power</u>
<u>Corp.</u>, 780 F.2d 124, 130 (1st Cir. 1985).

Plaintiffs have retained experienced and competent
counsel who will more than "fairly and adequately protect
the interests of the class," as required by Rule 23(a)(4).
Plaintiffs are represented by the non-profit legal
organization Children's Rights and the law firm Nutter
McClennen & Fish LLP ("Nutter").  Children's Rights'
attorneys have served as class counsel on much of the major
child welfare litigation in the United States.  The
attorneys at Children's Rights have many years of experience
litigating similar class actions across the country,
asserting constitutional and statutory claims on behalf of
children in foster care to obtain system-wide injunctive and
declaratory relief.  Nutter is a leading New England law
firm with a national litigation practice.  Prior to filing
this action, Plaintiffs' counsel reportedly conducted an in-
depth investigation of all aspects of the Massachusetts
child welfare system's operation and its treatment of
children.  Counsel indicate that they have spent hundreds of
hours meeting with sources and compiling and analyzing data,

and that they thoroughly researched all of Plaintiffs' legal claims.  In addition, counsel is prepared to fund all costs of this litigation through trial.

The named Plaintiffs also easily satisfy this requirement.  As summarized above, they each have alleged significant harms, often taking multiple forms, all of which are alleged to be attributable to failures within DCF. Thus, because Plaintiffs have retained experienced and competent counsel and because named Plaintiffs' interests are entirely consistent with those of the class, Plaintiffs meet the requirements of Rule 23(a)(4).

E.    Rule 23(b)(2).

In addition to satisfying the four elements of Rule 23(a), Plaintiffs must demonstrate that they also meet one of the requirements set forth in Rule 23(b).  Here, Plaintiffs assert that they have satisfied the requirements of Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  These

requirements "demand cohesiveness among class members with respect to their injuries." D.G., 594 F.3d at 1199 (citation and quotation marks omitted). Rule 23(b)(2) is "uniquely suited to civil rights action[s]." Yaffe v. Powers, 454 F.2d 1362, 1366 (1st Cir. 1972).

Defendants argue that Plaintiffs' allegations entail "highly-individualized determination[s], making the cases ill-suited to class-wide injunctive relief." (Dkt. No. 31, Defs.' Opp'n at 24.) Yet, Plaintiffs have proposed several forms of injunctive relief that would benefit the entire class, including stricter limits on caseworker caseloads and increased visitation by caseworkers of children in foster homes. Such prospective injunctive relief is fully consistent with Rule 23(b)(2), which, as noted, applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class."

Notwithstanding Defendants' arguments to the contrary, the existence of differences among members of the Plaintiff class does not make certification improper. In fact, it is not uncommon for courts in this circuit to certify class actions in which alleged systemic deficiencies resulted in

harms that manifested themselves differently among different segments of the plaintiff class. See, e.g., Rosie D. v. Patrick, 256 F. Supp. 2d 115 (D. Mass. 2003) (noting court's earlier certification of children with severe emotional disturbances alleging violations of several provisions of the federal Medicaid Act, in particular, those provisions which establish the Early and Periodic Screening, Diagnosis and Treatment ("EPSDT") program); Rolland v. Cellucci, No. 98-30208, 1999 WL 34815562, at *7 (D. Mass. Feb. 2, 1999) (certifying class of adults with mental retardation who reside in nursing facilities in Massachusetts despite plaintiffs' "varying needs" that require "different medical personal care attendant, transportation, visiting nurse, home health aid, or behavioral support services"); Ricci v. Okin, 537 F. Supp. 817 (D. Mass. 1982) (certifying class of adults with mental retardation despite need for individualized determinations regarding services).

Other jurisdictions have reached the same conclusion in certifying nearly identical classes of foster children. See, e.g., D.G., 594 F.3d at 1199 ("So long as [the Department's] challenged practices are based on grounds that

apply generally to the class, certification under Rule
23(b)(2) is proper even if at the class certification stage
it is conceivable some class members have not been actually
abused, neglected, or exposed to a risk of harm."); Marisol
A., 126 F.3d at 377 ("The unique circumstances of each child
do not compromise [class status]."); Baby Neal, 43 F.3d at
56 (same).

F.    Class Limitations.

        Defendants argue alternatively, if certification is
warranted, the court should place a number of limitations on
the proposed Plaintiff class.  Specifically, Defendants
suggest that the court limit the class by (1) dealing with
only issues of worker caseload, monitoring, and data
collection; (2) including only children who have been in
foster care for at least two years; and (3) dividing the
class into subclasses based on the named Plaintiffs' claims.
All three suggested limitations are unpersuasive.

        Defendants' first suggestion asks the court to limit
the available injunctive relief to policy reforms that will
affect the entire Plaintiff class in the same way.  This
appears to be simply an attempt to reargue the point that

there are differences among members of the Plaintiff class
and not all requested relief will affect every Plaintiff in
exactly the same way.  As explained above, these differences
are fully consistent with the requirements of Rule 23 and
the court need not limit the Plaintiff class as a result.

The second suggestion fails to appreciate the fact that
even children who have spent one week or even one day in DCF
custody are allegedly exposed to an unreasonable risk of
harm.  Thus, restricting the Plaintiff class to children who
have been in custody for at least two years is plainly
improper.

Defendants' third proposition -- the formation of
subclasses -- is the most reasonable of the three.
Defendants suggest that the court divide the Plaintiff class
into subclasses based on the claims alleged, e.g., a
subclass based on all children who were denied sibling
visitation rights.  The primary virtue of subclasses is
their potential to expedite discovery and to allow the court
"to conduct the trial in a more orderly manner, by tying the
order of proof to particular claims raised by the individual
subclasses."  Marisol A., 126 F.3d at 379.  However, this

court is wary of placing artificial limitations on the discovery process from the outset and is confident that the complaint is sufficiently detailed to allow discovery to proceed smoothly.  Moreover, once discovery has ended, the court will be better equipped to divide the Plaintiff class into subclasses, if necessary, and will be able to fashion that decision with an eye towards the eventual trial. Accordingly, the court will not accept Defendants' invitation to so limit the Plaintiff class at this stage in the litigation.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion to Certify Class and Appoint Class Counsel (Dkt No. 2) is hereby ALLOWED.  This case is now referred to Magistrate Judge Kenneth P. Neiman for a pretrial conference pursuant to Fed. R. Civ. P. 16.

It is So Ordered.

<u>/s/ Michael A. Ponsor</u>
MICHAEL A. PONSOR
U. S. District Judge